FILED by **JA** D.C.

Nov 24, 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **20-20241-CR-WILLIAMS/MCALILEY**

18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(2)(A)
18 U.S.C. § 1956(a)(1)(A)
18 U.S.C. § 1957
18 U.S.C. § 2
18 U.S.C. § 982(a)(1)

UNITED STATES OF AMERICA

vs.

NATALINO D'AMATO,

Defendant.
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment, unless otherwise specified:

### RELEVANT INDIVIDUALS AND ENTITIES

1. Petróleos de Venezuela, S.A. ("PDVSA"), was the state-owned and state-controlled oil company of Venezuela. PDVSA and its subsidiaries and affiliates were responsible for the exploration, production, refining, transportation, and trade in energy resources in Venezuela and provided funding for other operations of the Venezuelan government.

2. PDVSA entered into joint ventures with foreign oil companies in the oil-rich Orinoco belt in Venezuela to leverage the expertise of the foreign oil companies (collectively, the "PDVSA Subsidiaries"). PDVSA maintained a majority stake in, and controlled, the PDVSA Subsidiaries, and that control extended to the procurement process. The PDVSA Subsidiaries

included the following entities:

    a. Petrocedeño S.A. ("Petrocedeño") was a joint venture between two European oil companies and PDVSA.

    b. Petropiar S.A. ("Petropiar") was a joint venture between an oil company in the United States and PDVSA.

    c. Petromonagas S.A. ("Petromonagas") was a joint venture between a Russian oil company and PDVSA.

    d. Petrolera Sinovensa S.A. ("Sinovensa") was a joint venture between a Chinese oil company and PDVSA.

    e. Petromiranda S.A. ("Petromiranda") was a joint venture between five Russian oil companies that make up a consortium and PDVSA.

3. **NATALINO D'AMATO** resided in Venezuela and traveled to the United States often from 2014 to 2017. D'Amato maintained personal and investment bank accounts at multiple banks in the Southern District of Florida.

4. **NATALINO D'AMATO** owned or controlled various Venezuelan companies that sold goods and services to the PDVSA Subsidiaries. Those companies were the following: Venezolana de Mecanizado C.A. ("Vemeca"); Alpha Energy de Venezuela C.A. ("Alpha"); Industria Techno Parts C.A. ("ITP"); and Industria Nacional de Goma C.A. ("ING") (collectively, the "D'Amato Companies"). The D'Amato Companies each had one or more bank accounts at Mercantil Commercebank ("Mercantil") in the Southern District of Florida.

5. **NATALINO D'AMATO** owned and controlled a Nevis-based corporation called Kronos Enterprises Corp. ("Kronos"). D'Amato maintained accounts for Kronos at Mercantil and Wells Fargo Bank in the Southern District of Florida.

6. Venezuelan Official 1 was a senior procurement official at Petrocedeño between in or around March 2015 and in or around December 2017.

7. Venezuelan Official 2 was a senior procurement official at Petropiar between in or around January 2016 and in or around December 2017.

8. Venezuelan Official 3 was a procurement official at Petrocedeño between in or around 2014 and in or around 2017.

9. Venezuelan Official 4 was a procurement official at Petropiar between in or around 2016 and in or around 2017.

10. Venezuelan Official 5 was a procurement official at Petrocedeño between in or around 2011 and in or around 2018.

11. Co-Conspirator 1 was involved in the business of the D'Amato Companies and a signer on certain of the bank accounts of the D'Amato Companies.

## COUNT 1
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1. Paragraphs 1 through 11 of the General Allegations Section are re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around January 2013, until at least December 2017, in the Southern District of Florida, and elsewhere, the defendant,

**NATALINO D'AMATO,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate and agree with persons known and unknown to the Grand Jury to commit offenses under Title 18, United States Code, Section 1956 and 1957, as follows:

      a.    to knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A);

      b.    to knowingly conduct and attempt to conduct a financial transaction which involves the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A); and

      c.    to knowingly engage in a monetary transaction by, through, or to a financial institution, affecting interstate commerce in criminally derived property of a value greater than $10,000 that is derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

It is further alleged that the specified unlawful activity is an offense against a foreign nation, specifically Venezuela, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, as provided by Title 18, United States Code, Section 1956(c)(7)(B)(iv).

## PURPOSE OF THE CONSPIRACY

3.    It was the purpose of the conspiracy for **NATALINO D'AMATO** and his co-conspirators, including, among others, Venezuelan Officials 1, 2, 3, 4 and 5 (together, the "Venezuelan Officials"), to unlawfully enrich themselves by making and concealing bribery payments from **D'AMATO** to the Venezuelan Officials from accounts in the United States in

4

exchange for actions, influence, and advantages by the Venezuelan Officials to ensure, promote, or otherwise facilitate the award or payment of procurement contracts from the PDVSA Subsidiaries to the D'Amato Companies.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **NATALINO D'AMATO** and his co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following conduct in the Southern District of Florida and elsewhere:

4. **NATALINO D'AMATO** offered things of value constituting bribes to Venezuelan officials working at the PDVSA Subsidiaries, including Venezuelan Officials 1, 2, 3, 4 and 5, in exchange for the officials' assistance in awarding lucrative and inflated procurements contracts with the PDVSA Subsidiaries to the D'Amato Companies.

5. **NATALINO D'AMATO** received e-mails from Venezuelan officials at the PDVSA Subsidiaries with internal procurement information related to the PDVSA Subsidiaries.

6. Venezuelan Official 1 provided **NATALINO D'AMATO** with advanced notice of contract solicitations at Petrocedeño, coordinated with other Venezuelan officials to ensure that contract bids by the D'Amato Companies were accepted by Petrocedeño, and ensured that payment was expedited to the D'Amato Companies.

7. Venezuelan Official 2 provided **NATALINO D'AMATO** with assistance in the award and payment of Petropiar contracts to the D'Amato Companies.

8. Venezuelan Official 3 provided **NATALINO D'AMATO** with assistance in the award and payment of Petrocedeño contracts to the D'Amato Companies.

9. Venezuelan Official 4 provided **NATALINO D'AMATO** with assistance in the award and payment of Petropiar contracts to the D'Amato Companies.

10. Venezuelan Official 5 provided **NATALINO D'AMATO** with assistance in the award and payment of Petrocedeño contracts to the D'Amato Companies.

11. Between in or around 2013 and in or around 2017, **NATALINO D'AMATO** and others caused wire transfers totaling more than $160 million to be made from bank accounts of the PDVSA Subsidiaries to Mercantil accounts of the D'Amato Companies located in the Southern District of Florida, including:

  a. the transfer of approximately $99.8 million from Petrocedeño;

  b. the transfer of approximately $34.4 million from Petropiar;

  c. the transfer of approximately $15.5 million from Petromonagas;

  d. the transfer of approximately $11.3 million from Sinovensa; and

  e. the transfer of approximately $1.0 million from Petromiranda.

12. **NATALINO D'AMATO** and Co-Conspirator 1 received e-mails from Venezuelan officials at the PDVSA Subsidiaries, using personal e-mail accounts, with wire transfer instructions for accounts in which the officials could receive bribe payments.

13. In or around May 2015, **NATALINO D'AMATO** offered to pay Venezuelan Official 1 approximately $1 million in bribes in exchange for Venezuelan Official 1's assistance in awarding Petrocedeño contracts to the D'Amato Companies and affording **D'AMATO** other business advantages.

14. From in or around July 2015, through in or around December 2016, **NATALINO D'AMATO** caused over $2 million dollars in bribes to be wire transferred for the benefit of Venezuelan Official 1 from accounts of the D'Amato Companies at Mercantil Bank in the Southern District of Florida to a corporate account in Panama in the name of a relative of Venezuelan Official 1.

6

15. On or about April 19, 2017, **NATALINO D'AMATO** caused a wire transfer constituting a bribe in the amount of approximately $30,000 to be made for the benefit of Venezuelan Official 2 from a personal account of **D'AMATO** at Mercantil Bank in the Southern District of Florida to an account in the name of a relative of Venezuelan Official 2.

16. From in or around November 2014 through in or around December 2017, **NATALINO D'AMATO** caused wire transfers of more than $800,000 constituting bribes to be made for the benefit of Venezuelan Official 3 from accounts of the D'Amato Companies at Mercantil Bank in the Southern District of Florida to a corporate account controlled by Venezuelan Official 3.

17. From in or around April 2015 through in or around December 2016, **NATALINO D'AMATO** caused wire transfers of more than $160,000 constituting bribes to be made for the benefit of Venezuelan Official 4 from accounts of the D'Amato Companies at Mercantil Bank in the Southern District of Florida to various individual and corporate accounts controlled by Venezuelan Official 4.

18. From in or around August 2017 through in or around October 2017, **NATALINO D'AMATO** caused wire transfers constituting bribes of more than $170,000 to be made for the benefit of Venezuelan Official 5 from accounts of the D'Amato Companies at Mercantil Bank in the Southern District of Florida to a corporate account controlled by Venezuelan Official 5.

All in violation of Title 18, United States Code, Section 1956(h).

### COUNTS 2-5
### International Laundering of Monetary Instruments
### (18 U.S.C. § 1956(a)(2)(A))

1. Paragraphs 1 through 11 of the General Allegations Section and paragraphs 4 through 18 of Count 1 are re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates set forth in each Count below, in the Southern District of Florida and elsewhere, the defendant,

**NATALINO D'AMATO,**

knowingly transported, transmitted, and transferred, and aided and abetted, and caused, the transport, transmission, and transfer of, and attempted to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, that is, an offense against a foreign nation, specifically Venezuela, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, pursuant to Title 18, United States Code, Section 1956(c)(7)(B)(iv):

| Count | Approximate Date | Description of Transaction |
|---|---|---|
| 2 | December 9, 2016 | Wire transfer in the amount of approximately $1,034,576.70 from a Mercantil Bank account of ITP in the Southern District of Florida to an account at Banesco Bank in Panama for the benefit of Venezuelan Official 1. |
| 3 | April 19, 2017 | Wire transfer in the amount of approximately $30,000 from a Mercantil Bank account of D'Amato in the Southern District of Florida, to a personal account in Spain for the benefit of Venezuelan Official 2. |
| 4 | May 1, 2017 | Wire transfer in the amount of approximately $3,434,345.49 from an account of Petrocedeño in Portugal to a Mercantil Bank account of ITP in the Southern District of Florida. |
| 5 | June 15, 2017 | Wire transfer in the amount of approximately $2,908,943.49 from an account of Petrocedeño in Portugal to a Mercantil Bank account of ITP in the Southern District of Florida. |

In violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

## COUNTS 6-8
## Money Laundering
## (18 U.S.C. § 1956(a)(1)(A))

1. Paragraphs 1 through 11 of the General Allegations Section and paragraphs 4 through 18 of Count 1 are re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates set forth in each Count below, in the Southern District of Florida and elsewhere, the defendant,

**NATALINO D'AMATO,**

knowing that the property involved represented the proceeds of some form of unlawful activity, conducted, and aided and abetted, and caused to be conducted, and attempted to conduct, a financial transaction involving the proceeds of specified unlawful activity, with the intent to promote the carrying on of specified unlawful activity, that is an offense against a foreign nation, specifically Venezuela, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, pursuant to Title 18, United States Code, Section 1956(c)(7)(B)(iv):

| Count | Approximate Date | Description of Transaction |
|---|---|---|
| 6 | June 1, 2016 | Wire transfer in the amount of approximately $151,506.22 from a Mercantil Bank account of Vemeca in the Southern District of Florida to an account at BB&T Bank for the benefit of Venezuelan Official 3. |
| 7 | December 22, 2016 | Wire transfer in the amount of approximately $105,958.16 from a Mercantil Bank account of ITP in the Southern District of Florida to an account at Banesco Bank for the benefit of Venezuelan Official 4. |
| 8 | October 24, 2017 | Wire transfer in the amount of approximately $130,000 from a Mercantil Bank account of Vemeca in the Southern District of Florida to an account at Bank of America for the benefit of Venezuelan Official 5. |

In violation of Title 18, United States Code, Sections 1956(a)(1)(A) and 2.

# COUNTS 9-11
## Engaging in Transactions in Criminally Derived Property
### (18 U.S.C. § 1957)

1. Paragraphs 1 through 11 of the General Allegations Section and paragraphs 4 through 18 of Count 1 are re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates set forth in each Count below, in the Southern District of Florida and elsewhere, the defendant,

**NATALINO D'AMATO,**

did knowingly engage in, and aid, abet, and cause others to engage in, and attempt to engage in, a monetary transaction affecting interstate commerce, by, though, and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, that is an offense against a foreign nation, specifically Venezuela, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, pursuant to Title 18, United States Code, Section 1956(c)(7)(B)(iv):

| Count | Approximate Date | Description of Transaction |
|---|---|---|
| 9 | December 9, 2016 | Wire transfer in the amount of approximately $5,000,000 from a Mercantil Bank account of Vemeca in the Southern District of Florida to a Wells Fargo account of Kronos. |
| 10 | May 16, 2017 | Transfer of funds relating to the purchase of Goldman Sachs Group bonds for $301,623.61 from an investment account of Kronos in the Southern District of Florida. |
| 11 | July 17, 2017 | Wire transfer in the amount of approximately $3,000,000 from a Mercantil Bank account of ITP in the Southern District of Florida to an account of Natalino D'Amato at Titleist Asset Management. |

In violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE
## (18 U.S.C. § 982(a)(1))

1. The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **NATALINO D'AMATO,** has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1956 or 1957, as alleged this Indictment, the defendant, **NATALINO D'AMATO,** shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

3. The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to, the following:

   (i) approximately $14,691,851.79 seized from Wells Fargo Advisors account number 4850-9732 in the name of Kronos Enterprises Corp.;

   (ii) approximately $9,854,646.81 seized from Wells Fargo Advisors account number 3700-8508 in the name of Kronos Enterprises Corp.;

   (iii) approximately $7,791,854.82 seized from Wells Fargo Advisors account number 7103-8027 in the name of L.J.D.;

   (iv) approximately $6,968,670.01 seized from Wells Fargo Advisors account number 8950-0365 in the name of Kronos Enterprises Corp.;

   (v) approximately $5,897,975.66 seized from Tigress Financial Partners account number P82-004055 in the name of **NATALINO D'AMATO** and L.J.D.;

   (vi) approximately $746,950.98 seized from Bank of America account number 898095788895 in the name of L.J.D.; and

   (vii) approximately $34,280.03 seized from Bank of America account number 898071640481 in the name of **NATALINO D'AMATO.**

4. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property that cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property, under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 982(a)(1), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, 982(b)(1).

A TRUE BILL

FOREPERSON

ARIANA FAJARDO ORSHAN  
UNITED STATES ATTORNEY

DANIEL S. KAHN  
ACTING CHIEF, FRAUD SECTION  
CRIMINAL DIVISION

Michael N. Berger  
Assistant United States Attorney

Alexander Kramer  
Trial Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

NATALINO D'AMATO

Defendant.
_____/

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY***

Superseding Case Information:

**Court Division**: (Select One)

| | | | | |
|---|---|---|---|---|
| X | Miami | ___ | Key West | |
| ___ | FTL | ___ | WPB | ___ FTP |

New Defendant(s)          Yes ___    No ___
Number of New Defendants  ___
Total number of counts    ___

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)    Yes
   List language and/or dialect    Spanish

4. This case will take __6-7__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

    (Check only one)                          (Check only one)

    I    0 to 5 days       ___              Petty    ___
    II   6 to 10 days      _X_              Minor    ___
    II   11 to 20 days     ___              Misdem.  ___
    IV   21 to 60 days     ___              Felony   _X_
    V:   61 days and over  ___

6. Has this case been previously filed in this District Court?  (Yes or No)   No
   If yes:
   Judge: _____  Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?  (Yes or No)   Yes
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____  District of _____

   Is this a potential death penalty case? (Yes or No)   No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?          ___ Yes    _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?          ___ Yes    _X_ No

_____
MICHAEL N. BERGER
ASSISTANT UNITED STATES ATTORNEY
Court ID No. 5501557

*Penalty Sheet(s) attached

REV 4/8/08

iUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: <u>NATALINO D'AMATO</u>

**Case No**: _____

Count #: 1

<u>Conspiracy to Commit Money Laundering</u>

<u>Title 18, United States Code, Section 1956(h)</u>

\* **Max.Penalty:** Twenty (20) Years' Imprisonment

Counts #: 2-5

<u>International Laundering of Monetary Instruments</u>

<u>Title 18, United States Code, Section 1956(a)(2)(A)</u>

\* **Max.Penalty:** Twenty (20) Years' Imprisonment

Counts #: 6-8

<u>Money Laundering</u>

<u>Title 18, United States Code, Section 1956(a)(1)(A)</u>

\* **Max.Penalty:** Twenty (20) Years' Imprisonment

Counts #: 9-11

<u>Engaging in Transactions in Criminally Derived Property</u>

<u>Title 18, United States Code, Section 1957</u>

\* **Max.Penalty:** Ten (10) Years' Imprisonment

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.